THE WESTON FIRM
GREGORY S. WESTON (239944)
888 Turquoise Street
San Diego, CA 92109
Telephone:    858 488 1672
Fax:           480 247 4553
greg@westonfirm.com

BECK & LEE BUSINESS TRIAL LAWYERS
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Phone: 305 789 0072
Fax: 786 664 3334
jared@beckandlee.com

Counsel for Plaintiffs and the Proposed Class

FILED

10 FEB 11  PM 3: 52

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

JUNE HIGGINBOTHAM and JENNIFER RED, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

KELLOGG COMPANY and KELLOGG SALES CO.,

Defendants.

Case No: 10 CV - 255   MMA WVG

CLASS ACTION

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

DEMAND FOR JURY TRIAL



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1    Plaintiffs June Higginbotham and Jennifer Red ("Plaintiffs"), on behalf of themselves, all
2  others similarly situated, and the general public, by and through undersigned counsel, hereby sue
3  Defendants Kellogg Company and Kellogg Sales Co. (collectively referred to herein as
4  "Kellogg") and, upon information and belief and investigation of counsel, allege as follows:

5                                    **JURISDICTION AND VENUE**

6    1.    This Court has original jurisdiction over this action under 28 U.S.C. §1331 and 15
7  U.S.C. §1121.

8    2.    This Court also has original jurisdiction under 28 U.S.C. §1332(d)(2) (The Class
9  Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000
10 exclusive of interest and costs and more than two-thirds of the members of the Class reside in
11 states other than the state of which Defendants are citizens.

12    3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiffs
13 reside in and suffered injuries as a result of Kellogg's acts in this district, many of the acts and
14 transactions giving rise to this action occurred in this district, and Kellogg (1) is authorized to
15 conduct business in this district and has intentionally availed itself of the laws and markets of
16 this district through the promotion, marketing, distribution, and sale of its products in this
17 district; (2) resides in this district; and (3) is subject to personal jurisdiction in this district.

18                                         **INTRODUCTION**

19    4.    Plaintiffs June Higginbotham and Jennifer Red repeatedly purchased packaged
20 food products described herin made by Kellogg during the class period defined herein.

21    5.    Kellogg's "Nutri-Grain Bars" are labeled "More of the Whole Grains Your Body
22 Needs" and "Excellent Source of Calcium."

23    6.    Nutri-Grain Bars, however, also contain artificial trans fat.

24    7.    Absent these material deceptions, misstatements, and omissions described herein,
25 Plaintiffs and other Class members would not have purchased these Kellogg products.

26    8.    Plaintiffs seek an order that compels Kellogg to (1) cease marketing its products
27 using the misleading tactics complained of herein, (2) conduct a corrective advertising campaign,
28 (3) restore the amounts by which Kellogg was unjustly enriched, (4) destroy all misleading and
29 deceptive materials and products, and (5) compensate Plaintiffs and the Plaintiff Class for
30 purchasing and consuming these products.

31                                            **PARTIES**

32    14.    Defendant Kellogg Company is a Delaware corporation with its principal place of

                                                    1

---

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW
OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  business in California. Kellogg Company owns and controls Defendant Kellogg Sales Co.

2       15.    Defendant Kellogg Sales Co. is a Delaware corporation with its principal place of

3  business in California.

4       16.    Defendants are the manufacturers of Keebler Fudge Shoppe Grasshopper

5  Cookies, Keebler Fudge Shoppe Cookies 'n Crème, Keebler Chip Deluxe Cookies, Keebler

6  Sandies Shortbread Cookies, and Nutri-Grain Bars.

7       17.    Plaintiffs are residents of San Diego and Los Angeles Counties who repeatedly

8  purchased Kellogg products in various California stores during the class period defined below.

9
## SUMMARY OF THE STRONG EVIDENCE OF HEALTH
10
## DANGERS OF ARTIFICIAL TRANS FAT

11
**Artificial trans fat is a manufactured food product whose basic chemical structure is**
12
**different from natural fat molecules.**

13

14       18.    Trans fat is naturally found in trace amounts in foods derived from ruminant

15  animals, primarily in red meat.[1]

16       19.    Also known as vaccenic acid, natural trans fat has never been linked to any

17  negative health effect in human beings and is chemically different than artificial trans fat.

18       20.    Initial studies on rats indicate that consumption of vaccenic acid is beneficial to

19  health.[2]

20       21.    Artificial trans fat is manufactured in an industrial process called hydrogenation,

21  in which hydrogen atoms are added to normal vegetable oil by heating the oil to temperatures

22  above 400 degrees Fahrenheit in the presence of ion donor catalyst metals such as rhodium,

23  ruthenium, and nickel.[3]

24       22.    Nearly all the trans fat in the U.S. diet is the artificial fat present in partially

25  hydrogenated vegetable oil ("PHVO").[4]

26

27  [1] Dariush Mozaffarian *et al., Trans Fatty Acids and Cardiovascular Disease*, 354 New Eng. J.
Med. 1601, 1608 (2008).

28  [2] Ye Wang *et al., Trans-11 Vaccenic Acid Dietary Supplementation Induces Hypolipidemic*

29  *Effects on JCR:LA-cp Rats*, 138 J. Nutrition 2117 (November 2008).

30  [3] *See* Alice H. Lichtenstein, *Trans Fatty Acids, Plasma Lipid Levels, and Risk of Developing*
*Cardiovascular Disease*, 95 Circulation 2588, 2588-90 (1997).

31  [4] *See* Mozaffarian, 354 New Eng. J. Med. at 1608.

32

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW
OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

23.   PHVO was invented in 1901 and patented in 1902 by German chemist Wilhelm Normann. Trans fat molecules chemically differ from the natural fat molecules in other food products, as shown in the illustrations that follow.

24.   Natural fat, except the trace amounts of natural trans fat from ruminant animals, comes in two varieties: (1) fats that lack carbon double bonds ("saturated fat") and (2) fats that have carbon double bonds with the hydrogen atoms on the same side on the carbon chain ("cis fat"). Trans fat, however, has double bonds on opposite sides of its carbon chain.



**Saturated fat**





**Cis fatty acid**



3

**Trans fatty acid**



● = Hydrogen atom   ● = Carbon atom

25.   PHVO was initially a "wonder product" very attractive to the packaged food industry because it combines the low cost of unsaturated cis fat with the flexibility and long shelf life of saturated fat. Like cis fat, PHVO is manufactured from lower-cost legumes,[5] while saturated fat is derived from relatively expensive animal and tropical plant sources.[6]

26.   Like natural saturated fat, PHVO has a long shelf life, physical solidity, and flavor stability. The industrial process that adds hydrogen ions to normal vegetable oil improves food texture and permits food products to withstand heavy mechanical processing and high temperatures.[7] Given its versatility, PHVO was recently used in 40 percent of processed packaged foods.[8]

27.   Artificial trans fat does not exist in nature, and the human body has not evolved to digest it. The same unusual and unnatural chemical structure that gives artificial trans fat properties attractive from an industrial perspective makes it highly toxic to human health.

**Trans fat causes cardiovascular disease, type 2 diabetes, and cancer.**

---

[5] e.g., corn oil, soybean oil, peanut oil
[6] e.g., butter, cream, tallow, coconut oil
[7] *See* Alberto Ascherio *et al.*, *Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999). *See also* Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling (Update 2006) (2003), *available at* http://www.cfsan.fda.gov/%7Edms/qatrans2.html#fn.
[8] Mary Carmichael, *The Skinny on Bad Fat*, Newsweek, Dec. 1, 2003, at 66. *See also* Kim Severson, *Hidden Killer. It's **Trans** Fat. It's Dangerous. And It's In Food You Eat Every Day*, S.F. Chron., Jan. 30, 2002.

4

• **Heart Disease**

28.     In a joint Dietary Guidelines Advisory Committee Report, the U.S. Department of Health and Human Services and the U.S. Department of Agriculture recognized **"[t]he relationship between trans fatty acid intake and LDL cholesterol is direct and progressive, increasing the risk of cardiovascular disease."**[9]

29.     Food products with trans fat harm the heart by "rais[ing] the concentration of the most dangerous form of serum cholesterol (LDL cholesterol)" and "lower[ing] a protective form of serum cholesterol (HDL cholesterol)."[10]

30.     The American Heart Association notes **"trans fats raise your bad (LDL) cholesterol levels and lower your good (HDL) cholesterol levels. Eating trans fats increases your risk of developing heart disease."**[11]

31.     After an extensive evaluation of the scientific literature on the trans fat/CHD connection, the FDA concluded:

> ...based on the consistent results across a number of the most persuasive types of study designs (i.e., intervention trials and prospective cohort studies) that were conducted using a range of test conditions and across different geographical regions and populations...the available evidence for an adverse relationship between trans fat intake and CHD risk is strong.[12]

32.     Trans fat raises the risk of CHD more than any other known nutritive product.[13]

33.     Removing 2% of daily calories from trans fat from the American diet "would prevent approximately 30,000 premature coronary deaths per year, and epidemiologic evidence suggests this number is closer to 100,0000 premature deaths annually."[14]

34.     A study on the impact of trans fatty acids on heart health provides evidence that:

---

[9] Dep't of Health & Human Serv. & U.S. Dep't of Agric., 2005 Dietary Guidelines Advisory Committee Report, Section 10 (2005).
[10] *Id.*
[11] Am. Heart Ass'n., *Trans Fat Overview, available at* http://www.americanheart.org/presenter.jhtml?identifier=3045792.
[12] Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., Questions & Answers About Trans Fat Nutrition Labeling.
[13] Mozaffarian, 354 New Eng. J. Med. at 1603.
[14] Alberto Ascherio *et al., Trans Fatty Acids & Coronary Heart Disease*, 340 New Eng. J. Med. 94, 94-8 (1999).

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

> [E]ven the lower estimates from the effects [of PHVO] on blood lipids would suggest that more than 30,000 deaths per year may be due to the consumption of partially hydrogenated vegetable fat. Furthermore, the number of attributable cases of nonfatal coronary heart disease will be even larger.[15]

35. Since "the adverse effect of trans fatty acids is stronger than that of saturated fatty acids," saturated fat consumption would need to be reduced by 10 percent of caloric intake to have the same impact.[16]

36. "10 to 19 percent of CHD events in the United States could be averted by reducing the intake of trans fat."[17]

37. By raising LDL levels and lowering HDL levels, trans fat causes a wide variety of dangerous heart conditions, including low flow-mediated vasodilation, coronary artery disease, and primary cardiac arrest.

38. After conducting a crossover diet trial, Danish researchers determined that healthy men and women who maintained a high-trans fat diet had 21 percent lower protective HDL levels and 29 percent lower flow-mediated vasodilation ("FMD") than those on a high-saturated fat diet. Since FMD measures the percent increase between the diameter of the artery at ordinary and at maximum dilation, low FMD is "a risk marker of coronary heart disease.[18]

39. Australian researchers observed that heart attack patients possess elevated amounts of trans fat in their adipose tissue, strongly linking heart disease with long-term consumption of trans fat.[19]

40. By taking blood samples from 179 survivors of cardiac arrest and 285 randomly-selected control patients and comparing the top fifth with the bottom fifth of participants by trans fat intake, another study published in the American Heart Association's *Circulation* found that the largest consumers of trans fat have three times the risk of suffering primary cardiac arrest,

---

[15] W.C. Willett *et al., Trans Fatty Acids: Are the Effects only Marginal?* 84 Am. J. Pub. Health 722, 723 (1994).

[16] Mozaffarian, 354 New Eng. J. Med. at 1609.

[17] *See* Mozaffarian, 354 New Eng. J. Med. at 1611.

[18] Nicole M. De Roos *et al., Replacement of Dietary Saturated Fatty Acids by Trans Fatty Acids Lowers Serum HDL Cholesterol and Impairs Endothelial Function in Healthy Men and Women,* 21 Am. Heart Assoc. 1233, 1233-37 (2001).

[19] Peter M. Clifton *et al., Trans Fatty Acids In Adipose Tissue And The Food Supply Are Associated With Myocardial Infarction.* 134 J. of Nutrition 874, 874-79 (2004).

6

1  even after controlling for a variety of medical and lifestyle risk factors.[20]

2  • **Diabetes**

3      41.    Artificial trans fat causes type 2 diabetes.[21]

4      42.    A 14-year study of 84,204 women found that for every 2 percent increase in

5  energy intake from trans fat, the relative risk of type 2 diabetes was 1.39. In other words, each 2

6  percent of calories from artificial trans fat increases the risk of type 2 diabetes by 39 percent.[22]

7  • **Cancer**

8      43.    Trans fat is a known carcinogen shown to cause breast, prostate, and colorectal

9  cancer.

10      44.    A 13-year study of 19,934 French women showed 75 percent more women

11  contracted breast cancer in the highest quintile of trans fat consumption than did those in the

12  lowest.[23]

13      45.    In a 25-year study of 14,916 U.S. physicians, the doctors in the highest quintile of

14  trans fat intake had over a 100% greater risk of developing prostate cancer than the doctors in the

15  lowest quintile.[24]

16      46.    A study of 1,012 American males observing trans fat intake and the risk of

17  prostate cancer found "[c]ompared with the lowest quartile of total trans-fatty acid consumption,

18  the higher quartiles gave odds ratios (ORs) equal to 1.58," meaning those in the highest quartile

19  are 58% more likely to contract prostate cancer than those in the lowest.[25]

20      47.    A 600-person study found an 86 percent greater risk of colorectal cancer in the

21

22

23

---

24  [20] Rozenn N. Lemaitre *et al.*, *Cell Membrane Trans-Fatty Acids and the Risk of Primary Cardiac Arrest*, 105 Circulation 697, 697-701 (2002).

25  [21] Am. Heart Ass'n., *Trans Fat Overview*.

26  [22] Jorge Salmeron *et al.*, *Dietary Fat Intake and Risk of Type 2 Diabetes in Women*, 73 Am. J. of Clinical Nutrition 1019, 1023 (2001).

27

28  [23] Véronique Chajès *et al.*, *Association between Serum Trans-Monounsaturated Fatty Acids and Breast Cancer Risk in the E3N-EPIC Study.* 167 Am. J. of Epidemiology 1312, 1316 (2008).

29  [24] Jorge Chavarro *et al.*, *A Prospective Study of Blood Trans Fatty Acid Levels and Risk of Prostate Cancer.*, 47 Proc. Am. Assoc. of Cancer Research 95, 99 (2006).

30

31  [25] Xin Liu *et al.*, *Trans-Fatty Acid Intake and Increased Risk of Advanced Prostate Cancer: Modification by RNASEL R462Q Variant*, 28 Carcinogenesis 1232, 1232 (2007).

32

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1  highest trans fat consumption quartile.[26]

2       48.    A 2,910-person study found "trans-monounsaturated fatty acids…were dose-
3  dependently associated with colorectal cancer risk," which showed "the importance of type of fat
4  in the etiology and prevention of colorectal cancer."[27]

5       49.    The serious health conditions caused by trans fat consumption only occur from
6  artificial trans fat, not the trace natural trans fat found in ruminant sources:

7            Of four prospective studies evaluating the relation between the intake of trans
8            fatty acids from ruminants and the risk of CHD, none identified a significant
             positive association, whereas three identified nonsignificant trends toward an
9            inverse association. … [T]he sum of the current evidence suggests that the public
10           health implications of consuming trans fats from ruminant products are relatively
11           limited.[28]

12  **The grave, concrete risks of artificial trans fat consumption far outweigh any**
    **conceivable benefits of Kellogg's conduct.**
13

14       50.    There is no health benefit to artificial trans fat consumption and "no safe level" of
15  trans fat intake. [29]

16       51.    According to the established consensus of the scientific community, consumers
17  should keep their consumption of trans fat "as low as possible."[30]

18       52.    As Dariush Mozaffarian, M.D., notes in the New England Journal of Medicine:

19           [T]rans fats from partially hydrogenated oils have no intrinsic health value above
20           their caloric value. Thus, from a nutritional standpoint, the consumption trans
             fatty acids results in considerable potential harm but no apparent benefit. … Thus,
21           complete or near-complete avoidance of industrially produced trans fat—a
22           consumption of less than 0.5 percent of the total energy intake—may be necessary
23           to avoid adverse effects and would be prudent to minimize health risks.[31]

24  ------------------------------------------------

    [26] L.C. Vinikoor *et al.*, *Consumption of Trans-Fatty Acid and its Association with Colorectal*
25  *Adenomas*, 168 Am. J. of Epidemiology 289, 294 (2008).
26  [27] Evropi Theodoratou *et al.*, *Dietary Fatty Acids and Colorectal Cancer: A Case-Control Study*,
    166 Am. J. of Epidemiology 181 (2007).
27  [28] Mozaffarian, 354 New Eng. J. Med. at 1608-1609.
28  [29] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy, Carbohydrate,
29  Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (2005).
30  [30] Food & Nutrition Bd., Inst. of Med., Dietary Reference Intakes For Energy, Carbohydrate,
    Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids 424 (2005).
31  [31] Mozaffarian, 354 New Eng. J. Med. at 1609.
32

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW
OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

**Trans fat is so inherently dangerous that it is being banned in an increasing number of American states and European countries.**

53.     In 2008, California became the first state to ban all restaurant food with artificial trans fat, a law affecting approximately 88,000 eating establishments. Trans fats are now banned in restaurants as of January 1, 2010 and will be removed from retailers starting January 1, 2011.

54.     New York City banned all trans fat in its 20,000 food establishments in 2006. Similar laws exist in Philadelphia; Baltimore; Stamford, Connecticut; and Montgomery County, Maryland.

55.     A 2004 Danish law restricted all foods to under 2 percent of calories from trans fat, a standard none of the Kellogg products described below meet. Switzerland made the same restriction in 2008.[32]

56.     After conducting a surveillance study of Denmark's trans fat ban, researchers concluded the change "did not appreciably affect the quality, cost or availability of food" and did not have "any noticeable effect for the consumers."[33]

57.     In 2006, a trans fat task force co-chaired by Health Canada and the Heart and Stroke Foundation of Canada recommended capping trans fat content at 2 percent of calories for tub margarines and spreads and 5 percent for all other foods. On September 30, 2009, British Columbia became the first province to impose these rules on all restaurants, schools, hospitals, and special events.[34]

58.     In summary, Kellogg's supposedly healthy products have so much toxic artificial trans fat they would be illegal to sell in many parts of the world.

## SPECIFIC MISREPRESENTATIONS, MATERIAL OMISSIONS AND DECEPTIVE ACTS

---

[32] Andrew Collier, *Deadly Fats: Why Are We still Eating Them?*, The Independent (UK), June 10, 2008.

[33] Mozaffarian, 354 New Eng. J. Med. at 1610; *see also* High Levels of Industrially Produced Trans Fat in Popular Fast Food, 354 New Eng. J. Med. 1650, 1652 (2006).

[34] *Province Restricts Trans Fat in B.C.*, British Columbia Ministry of Healthy Living and Sport Press Release (2009), *available at* http://www2.news.gov.bc.ca/news_releases_2005-2009/2009HLS0013-000315.htm.

9

**Keebler 100 Calorie Right Bites Fudge Shoppe Grasshopper Cookies**



**Keebler 100 Calorie Right Bites Fudge Shoppe Cookies 'n Crème**



**Keebler 1000 Calorie Right Bites Chip Deluxe Cookies**

10



**Keebler 100 Calorie Right Bites Sandies Shortbread Cookies**



COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW
OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

59.   **False and misleading 0g trans fat claims:** The front labels of the Keebler 100 Calorie Right Bites products advertise "0g Trans Fat." The actual content of trans fat per serving is not "0g" and is deceptively omitted.

**Nutri-Grain Bars**



//
//
//
//
//
//
//
//
//
//
//
//

12



60. **Misleading Packaging:** Kellogg misleads consumers into believing that Nutri-Grain Bars are healthy by making misleading claims on the product packaging. Such statements include "Excellent Source of Calcium," "More of the Whole Grains Your Body Needs," and "Eat Better All Day." Though possibly true, these statements are deceptive in intent and nature: they imply that these products are healthy despite the fact that they contain  artificial trans fat, a toxic additive that causes heart disease, cancer, and type-2 diabetes.

61. The package of Nutri-Grain Bars pictured above has an image of a verdant field and an image of a Nutri-Grain Bar next to an image of a water bottle, a salad, an apple, and a person exercising. The obvious implication of this is that Nutri-Grain Bars are, like water, apples, salads, and exercising, part of a healthy lifestyle. In fact, Nutri-Grain Bars contain artificial trans fat, which renders the product unfit for human consumption.

62. **False and Misleading "Good Decision" Claim:** The package of Nutri-Grain Bars bears the phrase "ONE GOOD DECISION CAN LEAD TO ANOTHER." The obvious implication is that eating Nutri-Grain Bars is a good decision for one's health. In fact, the trans fat content of Nutri-Grain Bars renders the product dangerous and unfit for human consumption.

63. **False and Misleading "Nutri-Grain. Eat Better All Day." Claim:** The Nutri-

13

Grain Bar package bears the phrase "Nutri-Grain Bar. Eat Better All Day." with the obvious implication being that to eat a Nutri-Grain Bar is to "Eat Better." In fact, the trans fat content of Nutri-Grain Bars renders the product dangerous and unfit for human consumption.

## CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") in accordance with Rule 23 of the Federal Rules of Civil Procedure.

65.    The Class is defined as:

All persons (excluding officers, directors, and employees of Kellogg) who purchased, on or after January 1, 2000, one or more Kellogg products containing artificial trans fat for their own use rather than resale or distribution.

66.    Questions of law and fact common to Plaintiffs and the Class include:

a.    Whether Kellogg contributed to, committed, and/or is responsible for the conduct alleged herein;

b.    Whether Kellogg's conduct constitutes the violations of law alleged herein;

c.    Whether Kellogg acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein; and

d.    Whether Class members are entitled to compensatory, injunctive, and other equitable relief.

67.    By purchasing and/or using these products, all Class members were subjected to the same wrongful conduct.

68.    Plaintiffs' claims are typical of the Class's claims. Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

69.    The Class is sufficiently numerous, as it includes hundreds of thousands of individuals who purchased Kellogg products throughout the United States.

70.    Class representation is superior to other options for the resolution of the controversy. The relief sought for each Class member is small. Absent the availability of class action procedures, it would be infeasible for Class members to redress the wrongs done to them.

71.    Kellogg has acted on grounds applicable to the Class, thereby making final injunctive relief or declaratory relief concerning the Class as a whole appropriate.

72.    Questions of law and fact common to the Class predominate over any questions

14

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

1   affecting only individual members.

2   **Kellogg fraudulently concealed the health hazards of consuming its products.**

3
4   73.     Kellogg has tolled any applicable statute of limitations by affirmatively
5   concealing and publically misrepresenting its violations of law as described herein. A reasonable
6   consumer would have relied on the deceptive and false claims made on the packaging of Kellogg
7   products, and through the exercise of reasonable diligence would not have discovered the
8   violations alleged herein because Kellogg actively and purposefully concealed the truth
9   regarding its products.

10                                **FIRST CAUSE OF ACTION**

11                   **False Advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.***

12   74.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if
13   set forth in full herein.

14   75.     Kellogg has made and distributed, in interstate commerce and in this District,
15   products that make false or misleading statements of fact regarding their content. All of the
16   products described herein were placed into interstate commerce by Kellogg and sold throughout
17   the country and this District.

18   76.     These products contain on their labels actual misstatements and/or misleading
19   statements and failures to disclose, including, among others, the statement that such products
20   contain "0g" trans fat.

21   77.     These false and/or true, but misleading statements and omissions actually deceive,
22   or have a tendency to deceive, any reasonable consumer. This deception is material in that it is
23   likely to influence the purchasing decision of a reasonable consumer.

24   78.     Plaintiffs seek an order directing Kellogg to destroy all misleading and deceptive
25   advertising materials and products in accordance with 15 U.S.C. § 1118.

26   79.     Plaintiffs further seek an injunction under 15 U.S.C. § 1116 restraining Kellogg,
27   its agents, employees, representatives, and all persons acting in concert with Kellogg from
28   engaging in further acts of false advertising, and ordering removal of all of Kellogg's false
29   advertisements and products possessing misleading statements or omissions of fact.

30                                **SECOND CAUSE OF ACTION**

31                   **Violations of the California Unfair Competition Law,**
                     **Bus. & Prof. Code § 17200 *et seq.*, and**
32                   **the Common Law of Unfair Competition**

                                         15

80.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

81.     Bus. & Prof. Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

82.     The acts, omissions, misrepresentations, practices, and non-disclosures of Kellogg as alleged herein constitute "unlawful" business acts and practices in that Kellogg's conduct violates the Lanham Act, the False Advertising Law and the Consumer Legal Remedies Act.

83.     The acts, omissions, misrepresentations, practices, and non-disclosures of Kellogg as alleged herein constitute "unfair" business acts and practices in that Kellogg's conduct is immoral, unscrupulous, and offends public policy. Further, the gravity of Kellogg's conduct outweighs any conceivable benefit of such conduct.

84.     The acts, omissions, misrepresentations, practices, and non-disclosures of Kellogg as alleged herein constitute "fraudulent" business acts and practices in that Kellogg's conduct has a tendency to deceive both the Class members and the general public.

85.     By violating the California Unfair Competition Law, Kellogg also violated the common law of unfair competition.

86.     In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Kellogg from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

87.     Plaintiffs further seek an order for the disgorgement and restitution of all monies from the sale of these products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### Violations of the California False Advertising Law,
### Bus. & Prof. Code § 17500 *et seq.*

88.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

89.     In violation of Bus. & Prof. Code § 17500 *et seq.*, the advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the products without the knowledge that these products contain toxic artificial trans fat.

90.     Kellogg either knew or reasonably should have known that the labels on these products were untrue and/or misleading.

16

91.     As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Kellogg was unjustly enriched.

**FOURTH CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act,**
**Civ. Code § 1750 *et seq.***

92.     Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

93.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

94.     Kellogg's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

    b.     § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

    c.     § 1770(a)(9): advertising goods with intent not to sell them as advertised.

    d.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

95.     As a result, Plaintiffs and the Class have suffered irreparable harm and are entitled to injunctive relief and restitution.

96.     In compliance with Civ. Code § 1782, Plaintiffs have given written notice to Kellogg of their claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves. all others similarly situated, and the general public, pray for judgment and relief against Kellogg as follows:

A.     Declaring this action to be a proper class action.

B.     An order enjoining Kellogg from marketing its products that contain artificial trans fat as "no trans fat" and/or "0g trans fat";

C.     An order compelling Kellogg to conduct a corrective advertising campaign to

17

1   inform the public that its products contain unsafe amounts of trans fat at consumers' actual

2   consumption levels.

3         D.     An order requiring Kellogg to disgorge all monies, revenues, and profits obtained

4   by means of any wrongful act or practice.

5         E.     An order compelling Kellogg to destroy all misleading and deceptive advertising

6   materials and products as provided by 15 U.S.C. § 1118.

7         F.     An order requiring Kellogg to pay restitution to restore all funds acquired by

8   means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent

9   business act or practice, untrue or misleading advertising, or a violation of the CLRA, plus pre-

10   and post-judgment interest thereon;

11         G.     Costs, expenses, and reasonable attorneys' fees;

12         H.     Any other and further relief the Court deems necessary, just, or proper.

13                                                       **JURY DEMAND**

14         Plaintiffs demand a trial by jury on all causes of action so triable.

15   DATED: February 1, 2010                          Respectfully Submitted,

16

17

18                                        Gregory S. Weston

19                                        THE WESTON FIRM

20                                      888 Turquoise Street
San Diego, CA 92109

21                                      Telephone:    858 488 1672
Facsimile:    480 247 4553

22                                      greg@westonfirm.com

23                                      Jared H. Beck

24                                      BECK & LEE BUSINESS TRIAL
LAWYERS

25                                      28 West Flagler Street, Suite 555
Miami, FL 33130

26                                      Telephone:    305 789 0072

27                                      Facsimile:    786 664 3334
jared@beckandlee.com

28

29                                      Counsel for Plaintiffs

30

31

32

COMPLAINT FOR VIOLATIONS OF THE LANHAM ACT, UNFAIR COMPETITION LAW, COMMON LAW
OF UNFAIR COMPETITION, FALSE ADVERTISING LAW, AND CONSUMER LEGAL REMEDIES ACT

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
June Higginbotham and Jennifer Red, on Behalf of Themselves and All others Similarly Situated

**DEFENDANTS**

10 FEB -1 PM 3: 49

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff  San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  New Castle, DE
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Gregory S. Weston, The Weston Firm, 888 Turquoise Street, San Diego, CA 92109, (858) 468 1172.

Attorneys (If Known)

'10 CV - 255   MMA   WVG

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** / **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** / **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC § 1125 et seq., Bus & Prof Code § 17200, Bus & Prof Code § 17500, Civ Code § 1750
Brief description of cause:
Deceptive Acts and Practices

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ to be determined at trial
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 2-1-10
SIGNATURE OF ATTORNEY OF RECORD  Greg Weston

**FOR OFFICE USE ONLY**
RECEIPT # 9733   AMOUNT $350—   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

AB 02-01-10

```
DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS009733
Cashier ID: mbain
Transaction Date: 02/01/2010
Payer Name: GREGORY WESTON
--------------------------------
CIVIL FILING FEE
 For: HIGGINBOTHAM VS
 Case/Party: D-CAS-3-10-CV-000255-001
 Amount:       $350.00
--------------------------------
CREDIT CARD
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```